**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------X

DINO ANTOLINI, individually and on
behalf of all others similarly situated,

            Plaintiff,

vs.

ZORBX INC., et al.

            Defendants.

-------------------------------------------------------X

)
)
)
)
)
)
)
)
)
)
)
)

**CASE NO. 1:21-cv-11081**

**JUDGE JESSE M. FURMAN**

**MEMORANDUM OF LAW IN
SUPPORT OF DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S
CLASS ACTION COMPLAINT**

Respectfully submitted,

*/s/ Kathryn E. Hickner*
Kathryn E. Hickner
Jeffrey C. Miller (*Pro Hac Vice Pending*)
**BRENNAN MANNA & DIAMOND, LLC**
200 Public Square, Suite 3270
Cleveland, OH 44114
Telephone:  216.658.2155
Facsimile:  216.658.2156
Email: kehickner@bmdllc.com
        jcmiller@bmdllc.com

Kyle A. Johnson (*Pro Hac Vice Pending*)
**BRENNAN MANNA & DIAMOND, LLC**
75 East Market Street,
Akron, OH 44308
Telephone:  330.253.5060
Facsimile:  330.253.1977
Email: kajohnson@bmdllc.com

*Counsel for Defendants, Zorbx, Inc., Debbie
Mabrouk, and Issa Mabrouk*

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ................................................................................................ iii

**PRELIMINARY STATEMENT** ........................................................................................... 1

**RELEVANT FACTUAL BACKGROUND** ........................................................................... 2

**LEGAL ANALYSIS** ............................................................................................................ 4

I.  THE CLAIMS AGAINST DEBBIE AND ISSA MABROUK SHOULD BE DISMISSED
     PURSUANT TO FED. R. CIV. P. 12(b)(2) BECAUSE THE COURT LACKS PERSONAL
     JURISDICTION OVER THESE DEFENDANTS ............................................................. 4

II.  PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED FOR A LACK OF SUBJECT
      MATTER JURISDICTION PURSUANT TO FED. R. CIV. P. 12(b)(1) ............................. 7

  A.  Plaintiff lacks standing to pursue the present suit. ................................................. 7

  B.  Plaintiff lacks standing to seek money damages. ................................................. 10

  C.  Plaintiff lacks standing to seek any injunctive relief. ......................................... 12

III.  PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED PURSUANT TO FED. R. CIV.
       P. 12(b)(6) FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE
       GRANTED. .................................................................................................................. 12

  A.  Plaintiff's GBL §§ 349 and 350 claims fail as a matter of law because the Complaint does
       not sufficiently allege that ZORBX's products are toxic or harmful................................. 15

  B.  Plaintiff's claims brought under GBL §§ 349 and 350 should be dismissed for failure to
       meet the heightened pleading requirements of Rule 9(B). .................................................. 20

  C.  Plaintiffs' Unjust Enrichment Claim fails as a matter of law because it is Duplicative of the
       GBL claims. ........................................................................................................................ 22

  D.  Plaintiff's Breach of Warranty claim fails as a matter of law due to a lack of privity
       between Plaintiff and ZORBX. ............................................................................................ 23

**CONCLUSION** ................................................................................................................ 24

# TABLE OF AUTHORITIES

## Cases

*Ashcroft v. Iqbal,*
  556 U.S. 662 ................................................................................................................ 13
*Astor Chocolate Corp. v. Elite Gold Ltd.,*
  510 F. Supp. 3d 108, (S.D.N.Y. 2020)................................................................................ 5
*Bautista v. CytoSport, Inc.,*
  223 F. Supp. 3d 182, (S.D.N.Y. 2016)............................................................................. 19
*Bell Atlantic v. Twombly,*
  550 U.S. 544 .............................................................................................................. 13
Berni v. Barilla S.p.A.,
  964 F.3d 141, (2d Cir. 2020)............................................................................................ 9
*Chloe v. Queen Bee of Beverly Hills, LLC,*
  616 F.3d 158, (2d Cir. 2010)........................................................................................... 5
*Corsello v. Verizon New York, Inc.,*
  967 N.E.2d 1177, (N.Y. 2012)................................................................................. 22, 23
Cortec 949
  F.2d at 44 (2d Cir.1991)................................................................................................ 16
*Cortlandt St. Recovery Corp. v. Hellas Telecommunications, S.a.r.l,*
  790 F.3d 411, (2d Cir. 2015)........................................................................................... 8
*DiBartolo v. Abbott Labs.,*
  914 F.Supp.2d 601, (S.D.N.Y.2012)............................................................................... 23
*DiMuro v. Clinique Labs., LLC,*
  572 F. App'x 27, (2d Cir. 2014)...................................................................................... 8
*DiStefano v. Carozzi N. Am., Inc.,*
  286 F.3d 81, (2d Cir. 2001)............................................................................................ 5
*Ebin v. Kangadis Food Inc.,*
  No. 13 CIV. 2311 JSR, 2013 WL 6504547, (S.D.N.Y. Dec. 11, 2013) ........................... 23, 24
*Elkind v. Revlon Consumer Prod. Corp.,*
  No. 14-CV-2484 JS AKT, 2015 WL 2344134, (E.D.N.Y. May 14, 2015) ............................... 9
*Goldemberg v. Johnson & Johnson Consumer Cos., Inc.,*
  8 F. Supp. 3d 467, (S.D.N.Y. 2014)................................................................................. 21
*Hart v. BHH, LLC,*
  No. 15CV4804, 2016 WL 2642228, (S.D.N.Y. May 5, 2016) ............................................... 8
*I. Meyer Pincus & Assocs. P.C. v. Oppenheimer & Co.,*
  936 F.2d 759, (2d Cir.1991)........................................................................................... 16
*Izquierdo v. Mondelez Intl., Inc.,*
  16-CV-04697 (CM), 2016 WL 6459832, (S.D.N.Y. Oct. 26, 2016) ...................................... 22
*Koenig v. Boulder Brands, Inc.,*
  995 F. Supp. 2d 274, (S.D.N.Y. 2014)............................................................................. 22
*Lujan v. Defenders of Wildlife,*
  504 U.S. 555, (1992)...................................................................................................... 8
*Makarova v. United States,*
  201 F.3d 110, (2d Cir.2000)........................................................................................... 11

*Mantikas v. Kellogg Co.*,
  910 F.3d 633, (2d Cir. 2018)................................................................................ 22
*Marine Midland Bank, N.A. v. Miller*,
  664 F.2d 899, (2d Cir. 1981)............................................................................. 6, 7
*Miller v. Hyundai Motor Am.*,
  2016 WL 5476000, (S.D.N.Y. Sept. 28, 2016)................................................ 13, 14
*New York v. United Parcel Serv., Inc.*,
  131 F. Supp. 3d 132, (S.D.N.Y. 2015)................................................................. 19
Nicosia v. Amazon.com, Inc.,
  834 F.3d 220, (2d Cir. 2016)................................................................................. 9
*Orlander v. Staples, Inc.*
  802 F.3d 289, (2d Cir. 2015)............................................................................... 21
*Rivera v. S.C. Johnson & Son, Inc.*,
  No. 20-CV-3588, 2021 WL 4392300, (S.D.N.Y. Sep. 24, 2021)............. 8, 9, 12, 17, 18, 19, 21
*Rombach v. Chang*,
  355 F.3d 164, (2d Cir. 2004)............................................................................... 13
*Rothman v. Gregor*,
  220 F.3d 81, (2d Cir.2000)................................................................................. 16
*San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.*,
  75 F.3d 801, (2d Cir.1996).................................................................................. 16
*Sharpe v. A&W Concentrate Co.*,
  481 F. Supp. 3d 94, (E.D.N.Y. 2020) .................................................................. 18
*Suez Equity Inv'rs, L.P. v. Toronto-Dominion Bank*,
  250 F.3d 87, (2d Cir. 2001)................................................................................. 13
*Tasini v. New York Times Co.*,
  184 F.Supp.2d 350, (S.D.N.Y.2002)................................................................. 9, 12
*Tyman v. Pfizer, Inc.*,
  No. 16 Civ. 06941 (LTS), 2017 WL 6988936, (S.D.N.Y. Dec. 27, 2017)............................. 13
*U.S. ex. Rel. Polansky v. Pfizer, Inc.*,
  2009 WL 145682 (E.D.N.Y. May 22, 2009) ........................................................ 20
*United States of America v. Stuart Finkelstein*,
  Case No. 1:21-cr-00217 .................................................................................... 11
*United States v. Bedford Associates*,
  713 F.2d 895, (2d Cir.1983)................................................................................. 22
*Yamashita v. Scholastic Inc.*,
  936 F.3d 98, (2d Cir. 2019)................................................................................. 19

## Statutes

N.Y. C.P.L.R. § 302(a) (CONSOL. 2008) ................................................................. 5
N.Y.U.C.C. § 2–318............................................................................................. 23
New York General Business Law § 349................................................................ 12, 13, 21
New York General Business Law § 350................................................................ 12, 21

**Rules**

12(b)(2) ................................................................................................................ 1, 2
12(b)(6) ................................................................................................................ 1, 2
Fed. R. Civ. P. 12(b)(1) ..................................................................................... 1, 2, 7
Fed. R. Civ. P. 9(b) .............................................................................................. 13

Defendants, ZORBX, Inc. ("ZORBX"), Debbie Mabrouk, and Issa Mabrouk respectfully submit this memorandum of law in support of their motion to dismiss Plaintiff Dino Antolini's Class Action Complaint pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2) and 12(b)(6).

## PRELIMINARY STATEMENT

ZORBX manufactures and sells cleaning products that are advertised as "Non-Toxic," "Free Of Harsh Chemicals," "Safe For All Surfaces," and "Safe For People, Pets, & The Planet." ZORBX has spent considerable time and money to develop and test its products to ensure that they meet these standards. Reasonable consumers of ZORBX's cleaning products understand that phrases like "Non-Toxic" and "Free of Harsh Chemicals" mean that these products are not poisonous or capable of causing death or serious debilitation under normal use.

Plaintiff contends in the Complaint, however, that ZORBX's cleaning products are deceptively advertised because individual ingredients within the products may cause skin or eye irritation. Plaintiff admits in the Complaint, however, that he does not know the formulation of the ZORBX cleaning products identified in the Complaint.

Plaintiff could have tested the formulation of each of the ZORBX cleaning products identified in the Complaint prior to filing this lawsuit to determine whether the products were toxic or unsafe. In fact, Plaintiff could have analyzed whether the ingredients allegedly causing skin or eye irritation identified in the Complaint were present in ZORBX's cleaning products at unsafe or harmful levels in ZORBX's cleaning products. This did not occur.

Neither a lack of understanding nor a general curiosity can give rise to a cognizable legal claim in this or any other jurisdiction. Plaintiff's Complaint is just that: an individual claims to have purchased a product and—without any understanding of its makeup or composition—files a lawsuit against that product's manufacturer based on an assumption that the product may not be

"Non-Toxic" or "Free of Harsh Chemicals." To permit such a suit, especially one asserting class action claims, opens the floodgates to spurious litigation against product manufacturers without so much as a shred of evidence in support of the consumer's assumptions.

Plaintiff does set not forth plausible factual contentions that ZORBX's cleaning products as formulated are toxic or harmful to support any of the claims presented. Accordingly, for these and other reasons detailed herein, ZORBX respectfully requests that this Court dismiss Plaintiff's Complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2), and 12(b)(6).

## **RELEVANT FACTUAL BACKGROUND**

Plaintiff's suit centers on alleged grievances over the composition of ZORBX's products and the attendant advertising of those products. Plaintiff claims to have purchased ZORBX's "Original Non-Toxic Odor Remover" and "Laundry Stain Remover" in 2021 at a larger retailer. (DOC#7, at ¶ 10.) Notably, Plaintiff provides no information about where the products were purchased, the date of the purchase, or even any documentation supporting the actual purchase of these products.

Nevertheless, Plaintiff alleges that ZORBX labels the products at issue as "Non-Toxic," "Safe for All Surfaces," "Safe for People, Pets & the Planet," and otherwise contain "No Harsh Chemicals." (*Id.*, at ¶ 28). Plaintiff then makes the following cursory allegations:

> "[T]he Products do, in fact, pose a risk of harm to humans, animals, and/or the environment. (*Id.*, at ¶ 41. Emphasis in original.)
>
> ZORBX "failed to adequately inform reasonable consumers, including Plaintiff, that the Products can cause harm to humans, animals, and/or the environment. (*Id.*, at ¶ 93.)
>
> "All of the Products can cause harm to humans, animals, and/or the environment." (*Id.*, at ¶ 96.)

However, there is a crucial disconnect within Plaintiff's Complaint. Despite claiming that the Products are harmful, Plaintiff admits he *lacks any actual knowledge about the composition of the Products at issue*. Plaintiff states:

> "The Products' labeling does not adequately disclose to the consuming public the true nature of the ingredients contained in the Products." (*Id.*, at ¶ 31. Emphasis in original.)

> ZORBX "omit[s] both the specific chemical ingredients contained in its products, as well as and [sic] weight and concentration fraction information[.]" (*Id.*, at ¶ 43.)

> ZORBX has "hidden and [is] hiding the ball on what actual ingredients are contained within their products." (*Id.*, at ¶ 46.)

> ZORBX does "not publicly list or disclose the concentration of any ingredient contained in the Products." (*Id.*, at ¶ 50.)

Despite Plaintiff's admitted lack of knowledge about the composition of ZORBX's cleaning products, he goes on to allege that the ingredients within the products —standing alone in some unspecified quantity—*could* be harmful on their own. (*Id.*, at ¶¶ 60-79.) Plaintiff then provides screenshots of Amazon.com product reviews in which unidentified and unknown consumers claim they did not like the smell of the products to establish that the products are toxic or harmful . (*Id.*, at ¶¶ 86-88). Each of Plaintiff's allegations is otherwise completely unsupported by information  as to how or why the specific Products at issue are purportedly harmful.

In the end, Plaintiff seeks injunctive relief and monetary damages. First, Plaintiff claims he "would purchase the Products in the future if they were properly labeled, and/or the Products complied with the labeling and advertising statements." (*Id.*, at ¶ 95.) Plaintiff also states "[a]s a result of the false and misleading labeling, the Products are sold at a premium price,

approximately no less than $10.59 for a 16-ounce ZORBX containers, excluding tax, compared to other similar products represented in a non-misleading way." (*Id.*, at ¶ 115.)

Lastly, Plaintiff believes that Debbie and Issa Mabrouk are also somehow liable for the foregoing grievances. In this regard, Plaintiff alleges that Debbie Mabrouk "is an Owner and Operator of ZORBX Inc." and that, through ZORBX, she "manufactures, distributes, markets, labels and sells cleaning and odor-removal solutions under the popular 'ZORBX' brand." (*Id.*, at ¶ 14.) As to Issa, Plaintiff makes the same allegations, and further notes that he is Chief Operating Officer of ZORBX and the primary inventor of the products at issue. (*Id.*, at ¶ 15.) Plaintiff also avers that Issa directed ZORBX to mislabel the products as safe despite his knowing that they were harmful. (*Id.*, at ¶ 15.)

## LEGAL ANALYSIS

This *Motion to Dismiss* rests on three different federal rules of civil procedure, each of which is discussed in turn below. First, Debbie and Issa Mabrouk move this Court for an order dismissing the claims against them for want of personal jurisdiction pursuant to Rule 12(b)(2). Next, Zorbx moves this Court for an order dismissing the claims brought against it for a lack of subject matter jurisdiction under Rule 12(b)(1) due to a lack of standing.[1] Finally, in conjunction with the foregoing, ZORBX seeks to dismiss each of Plaintiff's claim for failure to state a claim upon which relief can be granted under Rule 12(b)(6).[2]

I. **THE CLAIMS AGAINST DEBBIE AND ISSA MABROUK SHOULD BE DISMISSED PURSUANT TO FED. R. CIV. P. 12(b)(2) BECAUSE THE COURT LACKS PERSONAL JURISDICTION OVER THESE DEFENDANTS**

The Court should dismiss all claims against Debbie and Issa Mabrouk. "On a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2),

---

[1] Debbie and Issa Mabrouk join in this request should the Court decline to dismiss the claims against them.
[2] Debbie and Issa Mabrouk also join in this request should the Court decline to dismiss the claims against them.

'the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant.'"

*Astor Chocolate Corp. v. Elite Gold Ltd.*, 510 F. Supp. 3d 108, 120 (S.D.N.Y. 2020), *citing*

*DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001).

To establish personal jurisdiction, federal courts must ensure that the exercise of said

jurisdiction (1) complies with the state's long-arm statute; and (2) comports with the due process

requirements of the United States Constitution. *Chloe v. Queen Bee of Beverly Hills, LLC*, 616

F.3d 158, 163 (2d Cir. 2010). First, New York's long-arm statute states:

> As to a cause of action arising from any of the acts enumerated in
> this section, a court may exercise personal jurisdiction over any
> non-domiciliary ... who in person or through an agent: 1. transacts
> any business within the state or contracts anywhere to supply
> goods or services in the state; or 2. commits a tortious act within
> the state ...; or 3. commits a tortious act without the state causing
> injury to person or property within the state ... if he (i) regularly
> does or solicits business, or engages in any other persistent course
> of conduct, or derives substantial revenue from goods used or
> consumed or services rendered, in the state, or (ii) expects or
> should reasonably expect the act to have consequences in the state
> and derives substantial revenue from interstate or international
> commerce....

*Id.*, *citing* N.Y. C.P.L.R. § 302(a) (CONSOL. 2008) (internal citation omitted).

"If the long-arm statute permits personal jurisdiction, the second step is to analyze

whether personal jurisdiction comports with the Due Process Clause of the United States

Constitution. This analysis has two related components: the 'minimum contacts' inquiry and the

'reasonableness' inquiry." *Chloe*, 616 F.3d at 164. "For purposes of this inquiry, a distinction is

made between 'specific' jurisdiction and 'general' jurisdiction. Specific jurisdiction exists when

'a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the

defendant's contacts with the forum.'" *Id.* "A court's general jurisdiction, on the other hand, is

based on the defendant's general business contacts with the forum state and permits a court to

exercise its power in a case where the subject matter of the suit is unrelated to those contacts." *Id.*

Crucially, however, "if an individual has contact with a particular state only by virtue of his acts as a fiduciary of the corporation, he may be shielded from the exercise, by that state, of jurisdiction over him personally on the basis of that conduct." *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 902 (2d Cir. 1981)(alleged misrepresentations attributed to corporate agent consisted of no more than confirmations and reiterations of the corporation's own statements and thus the corporate agent was shielded from the exercise of personal jurisdiction for those statements). The Second Circuit explained:

> Thus, his conduct, although it may subject him to personal liability, may not form the predicate for the exercise of jurisdiction over him as an individual. The underpinning of this fiduciary shield doctrine is the notion that it is unfair to force an individual to defend a suit brought against him personally in a forum with which his only relevant contacts are acts performed not for his own benefit but for the benefit of his employer. *Id.*

Similarly, Plaintiff cannot establish personal jurisdiction over either Debbie or Issa Mabrouk. Plaintiff's Complaint provides almost no allegations regarding Debbie Mabrouk, and simply alleges she is an owner of ZORBX. Plaintiff makes similar allegations regarding Issa, though he also claims Issa knew the products at issue were harmful but nonetheless directed them to be misrepresented as non-harmful. This is not enough to establish personal jurisdiction over either party.

As the Second Circuit makes clear, if a defendant's only contact with a state comes via the contacts of their company, then personal jurisdiction will not lie. Plaintiff does not allege that Debbie or Issa have any other contacts with New York aside from their association with ZORBX, which itself does business in New York. In fact, Plaintiff did not even directly purchase

the products at issue from ZORBX, Debbie, or Issa, and instead alleges to have purchased them from "a large retailer." Plaintiff seeks to hail the Mabrouks into New York by virtue of their affiliation with ZORBX, which independently does not allow personal jurisdiction.

What is more, the present circumstances are analogous to those in *Marine Midland Bank*, wherein the Court likewise determined personal jurisdiction did not lie. There, the bank sued Miller—the president of a coal consulting company—over misrepresentations he provided in a written report that induced lending from the bank. *Marine Midland Bank*, 664 F.2d at 900. Miller even traveled to New York to present and confirm the findings of his company's report to the bank on two separate occasions. *Id.*

Nonetheless, the Court found it "obvious" that jurisdiction did not lie against Miller individually since he did "no more than confirm[] and reiterat[e] the corporation's own statements." *Id.* at 903. Similarly here, Plaintiff sued ZORBX for deceptive corporate advertising, and seeks to hold the Mabrouks liable via their association with the company. In fact, the Mabrouks possesses even fewer contacts with New York than Miller did, considering Plaintiff does not allege the Mabrouks personally echoed any of the alleged misrepresentations, nor personally travelled to New York (as Miller did).

Therefore, as in *Marine Midland Bank*, personal jurisdiction does not lie against Debbie or Issa Mabrouk, and Plaintiff's claims against them must be dismissed.

## II.     PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED FOR A LACK OF SUBJECT MATTER JURISDICTION PURSUANT TO FED. R. CIV. P. 12(b)(1)

### A.     Plaintiff lacks standing to pursue the present suit.

Plaintiff does not possess standing to litigate the instant claims, whether he seeks money damages or injunctive relief. Pursuant to Fed. R. Civ. P. 12(b)(1), a district court must dismiss an action for lack of subject matter jurisdiction when it "lacks the statutory or constitutional power

to adjudicate it ... such as when ... the plaintiff lacks constitutional standing to bring the action." *Rivera v. S.C. Johnson & Son, Inc.*, No. 20-CV-3588, 2021 WL 4392300, at *3 (S.D.N.Y. Sep. 24, 2021), *citing Cortlandt St. Recovery Corp. v. Hellas Telecommunications, S.a.r.l*, 790 F.3d 411, 417 (2d Cir. 2015). "The plaintiff bears the burden of alleging facts that affirmatively and plausibly suggest that [he] has standing to sue." *Id.* "In determining whether that burden has been met, the Court must accept as true all material allegations in the complaint, and construe the complaint in favor of the plaintiff." *Id.*

"[T]he irreducible constitutional minimum of standing contains three elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "First, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized *** and (b) actual or imminent, not 'conjectural' or 'hypothetical[.]'" *Id.* (internal citations and quotations omitted). "Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court.'" *Id.* "Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Id.* at 561.

Moreover, "in a class action, the named plaintiffs must themselves have standing to sue; it is not sufficient to show that 'an injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" *Hart v. BHH, LLC*, No. 15CV4804, 2016 WL 2642228, at *2 (S.D.N.Y. May 5, 2016), *quoting Lewis v. Casey*, 518 U.S. 343, 357 (1996). In *Hart*, for example, the court dismissed claims over unpurchased products since they were "distinct and serve different purposes." *Hart*, 2016 WL 2642228, at *4; *see also DiMuro v. Clinique Labs., LLC*, 572 F. App'x 27, 29 (2d Cir. 2014) (no standing to sue when

unpurchased products contained different ingredients); *Elkind v. Revlon Consumer Prod. Corp.*, No. 14-CV-2484 JS AKT, 2015 WL 2344134, at *4 (E.D.N.Y. May 14, 2015) ("Because they have not purchased [the product at issue], Plaintiffs have not been injured in the 'personal and individual way' required by Article III.").

Additional considerations apply to requests for injunctive relief. "Pursuant to the well-established law on standing to pursue injunctive relief, a Plaintiff must establish a 'real or immediate threat of injury.'" *Rivera*, 2021 WL 4392300, at *8, *citing Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016). "'Although past injuries may provide a basis for standing to seek money damages, they do not confer standing to seek injunctive relief unless the plaintiff can demonstrate that she is likely to be harmed again in the future in a similar way.'" *Id*. Further, as the Second Circuit stated, "it is particularly difficult for 'past purchasers of a consumer product who claim to be deceived by that product's packaging *** to prove that they are likely to encounter future harm of the kind that makes injunctive relief appropriate.'" *Rivera,* 2021 WL 4392300, at *8, *citing  Berni v. Barilla S.p.A.,* 964 F.3d 141, 147 (2d Cir. 2020).

There are two types of challenges to subject matter jurisdiction: (1) a facial challenge contesting the sufficiency of the jurisdictional allegations contained in the complaint; and (2) a factual attack contesting the presumptive truthfulness of the complaint's jurisdictional allegations. *Tasini v. New York Times Co.*, 184 F.Supp.2d 350, 353–54 (S.D.N.Y.2002). "While a court must accept as true all the material allegations of the complaint in a *facial* attack…, [i]n a *factual* challenge, by contrast, 'no presumptive truthfulness attaches to the complaint's jurisdictional allegations; rather, the burden is on the plaintiff to satisfy the Court, as fact-finder, of the jurisdictional facts.'" *Id.* (internal citations omitted).

Plaintiff's claims for money damages and injunctive relief independently fail for want of Article III standing based on the allegations in the Complaint. Furthermore, there are significant questions regarding whether Plaintiff authorized the filing of this lawsuit or even purchased the products at issue, which raises a factual attack on standing. Each is further addressed in turn.

## B.   Plaintiff lacks standing to seek money damages.

Here, Plaintiff alleges he purchased ZORBX's "Original Non-Toxic Odor Remover" and "Laundry Stain Remover" in 2021. (DOC#7, ¶ 10). However, Plaintiff's purported injuries regarding his purchase of these products is in no way "concrete," "particularized," "actionable," or "imminent" but instead entirely "conjectural" and "hypothetical." Plaintiff's entire suit rests on the notion that the products at issue are toxic—yet he concedes he is without any meaningful information regarding the particular composition of these products, nor the concentration of certain ingredients within the products. Plaintiff's claims are all the more speculative considering he does not allege to have sustained any articulable injury. For example, Plaintiff does not claim to have purchased the products, used them, and subsequently sustained some physical injury (e.g., severe skin irritation). Without any actionable injury alleged in the Complaint, Plaintiff lacks standing to pursue his claims over ZORBX's "Original Non-Toxic Odor Remover" and "Laundry Stain Remover."

Notably, Plaintiff also fails to identify where the products were purchased, how much he specifically paid for the products, or provide any documentation including a receipt or even photographs of the actual product purchase to establish that the purchase did in fact occur. Defendants question whether Plaintiff—a serial class-action filer[3]—ever actually purchased this

---

[3] *See Antolini v. Guatier-Winther et al* (Case No.: 18-cv-02942); *Antolini v. Freund et al* (Case No. 18-cv-03259); *Antolini v. Wort et al* (Case No.: 18-cv-04055); *Antolini v. Christopher & Seventh Realty LLC et al* (Case No.: 18-cv-10767); *Antolini v. Brue et al* (Case No.: 18-cv-11070); *Antolini v. Morgenstern et al* (Case No.: 19-cv-04938); *Antolini v. 75 & 81 Orchard Associates LLC et al* (Case No.: 19-cv-05894); *Antolini v. N Corporation et al* (Case No.: 19-cv-07385); *Antolini v. Rosenblum et al* (Case No.: 19-cv-06264); *Antolini v. Gilbert et al* (Case No.: 19-cv-

product, especially considering that Plaintiff's counsel has been indicted in this district for filing fraudulent Americans with Disabilities Act ("ADA") lawsuits on behalf of individuals who neither authorized those lawsuits nor visited those establishments to obtain monetary settlements. *See, United States of America v. Stuart Finkelstein,* Case No. 1:21-cr-00217.[4] In light of these issues, Defendants have serious concerns about whether Plaintiff authorized the filing of this lawsuit or even purchased the products at issue.

In addition, Plaintiff goes on to seek redress for purported deficiencies within eleven of ZORBX's product lines (including variations of products within those lines). (DOC#7, at ¶ 29). However, nowhere in his Complaint does Plaintiff claim to have purchased anything other than the "Original Non-Toxic Odor Remover" and "Laundry Stain Remover." Consequently, considering Plaintiff lacks standing to sue over the products he allegedly purchased, he is further precluded from pursuing claims over products he *did not purchase*. Indeed, Plaintiff does not even allege ZORBX's other products are substantially similar to the ones he purchased, nor could he (i.e., he *admits he lacks substantive knowledge about the composition of the products in the first instance*).

Facially, Plaintiff fails to meet his burden to establish Article III standing with regards to any of ZORBX's products and his Complaint should be dismissed. Factually, given the lack of any substantive allegation supporting the fact that Plaintiff purchased the products at issue and the serious allegations against Plaintiff's counsel for filing fraudulent lawsuits without the authorization of the named plaintiff, Plaintiff has the burden upon a standing challenge to

---

06578); *Antolini v. Nieves et al* (Case No.: 19-cv-07645); *Antolini v. Moses et al* (Case No.: 19-cv-08012); *Antolini v. Sassouni et al* (Case No.: 19-cv-08496); *Antolini v. McCloskey et al* (Case No.: 19-cv-09038); *Antolini v. Thurman et al* (Case No.: 19-cv-09674); *Antolini v. 110 Thompson St. Owners Corp. et al* (Case No.: 19-cv-10567).
[4] Because Defendants are making a factual attack on Plaintiff's standing, the Court may refer to evidence outside of the pleadings, including Plaintiff's counsel's relevant criminal proceeding. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir.2000)("In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court, as it did here, may refer to evidence outside the pleadings."). The burden then shifts to Plaintiff to establish by a preponderance of the evidence that standing and, thus, subject matter jurisdiction exists. *Id.*

"satisfy the Court, as fact finder, of the jurisdictional facts." *Tasini*, *supra*. If Plaintiff cannot establish that he purchased the products or even authorized the filing of this lawsuit, then the Court should also dismiss the action for a lack of standing.

###    C.   Plaintiff lacks standing to seek any injunctive relief.

Plaintiff also plainly lacks standing to obtain injunctive relief. In the Complaint, Plaintiff merely contends it is "likely" he "would purchase the Products in the future if they were properly labeled, and/or the Products complied with the labeling and advertising statements." (DOC#7, at ¶ 95). Plaintiff's grievance is thus two-fold: (a) he believes he unduly paid a premium for ZORBX's products (i.e., money damages, addressed above); and (b) he alleges to have been misled into purchasing ZORBX's products.

In the latter instance, it is implausible to deduce that Plaintiff—who contends he was *previously* misled into purchasing ZORBX's products—could only avoid being misled in the future if ZORBX were enjoined from publishing its current advertising. Indeed, as the Southern District of New York opined just six months ago in an analogous case, "The Court cannot conceive of a scenario in which these Plaintiffs would again be deceived by the Products' allegedly misleading representations, let alone what kind of injunctive relief would prevent such deception." *Rivera*, 2021 WL 4392300, at *8 (emphasis added). In sum, whether he seeks monetary damages or injunctive relief, Plaintiff lacks standing to pursue the present claims and his *Complaint* should be dismissed.

### III.    PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED PURSUANT TO FED. R. CIV. P. 12(b)(6) FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Plaintiff asserted four claims against the Defendants: (1) Violation of New York General Business Law § 349; (2) Violation of New York General Business Law § 350; (3) Breach of Warranty; and (4) Unjust Enrichment. All four of these claims are premised upon Plaintiff's

12

contention that ZORBX's product advertising is false, misleading, and/or deceptive. Plaintiff's claims, however, fail to set forth facts establishing a plausible claim that ZORBX's product advertising is in fact false, misleading, and/or deceptive. *See, Bell Atlantic v. Twombly,* 550 U.S. 544, 555 (factual allegations must be enough to raise a right to relief above the speculative level); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").

Furthermore, because Plaintiff's New York Gen. Bus. Law §§ 349-350 claims concern deceptive or fraudulent advertising, these claims are subject to the higher pleading standard set forth in Fed. R. Civ. P. 9(b). *Suez Equity Inv'rs, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 95 (2d Cir. 2001) (Rule 9(b) "governs the pleading of fraud claims and it requires that plaintiff plead fraud with particularity."); *see also, Tyman v. Pfizer, Inc.*, No. 16 Civ. 06941 (LTS), 2017 WL 6988936, at *8–10 (S.D.N.Y. Dec. 27, 2017) (in false advertising case, holding Rule 9(b) to apply, because "the gravamen of the complaint is plainly fraud" in that plaintiffs "allege, repeatedly, that [defendant] intentionally made deceptive, fraudulent, misleading, and demonstrably false factual representations in labeling and marketing the ChapStick Products, and purposefully concealed material information about them")(quoting *Rombach v. Chang*, 355 F.3d 164, 172 (2d Cir. 2004)).

In the consumer fraud context, as elsewhere, courts "tend to take a holistic approach." *Miller v. Hyundai Motor Am.*, 2016 WL 5476000, at *14 (S.D.N.Y. Sept. 28, 2016). "As part of this inquiry, courts look for references to "specific misrepresentations in the complaint, as opposed to general conduct alleged to constitute unfair or deceptive practices. *Id.* "Additionally, courts consider whether the complaint contains 'averments classically associated with fraud,'

namely, allegations of 'fraudulent concealment,' 'fraudulent misrepresentations,' and 'deceptive practices,' based on a defendant's 'knowing acts.'" *Id.*

Here, Plaintiff's false advertising claims are subject to Rule 9(b)'s heightened pleading standard because the gravamen of the Complaint is plainly fraud. The Complaint lists several averments classically associated with fraud:

> "By falsely, misleadingly, and deceptively labeling the Products, defendants sought to take advantage of consumers' desire for non-toxic cleaning products . . .." (DOC#7, at ¶ 6.)

> "[D]efendants do their absolute best to conceal what ingredients make up their products. The Products' labeling does not adequately disclose to the consuming public the true nature of the ingredients contained in the Products..." (*Id.* at ¶ 31.)

> "Defendants conceal from the consuming public the chemical ingredient makeup of their products. . . . It is little more than a fraudulent sham designed to distract and mislead consumers from what the Products actually contain . . .." (*Id.* at ¶ 33.)

> "[D]efendants have embarked upon an intentional & deliberate coverup that is pervasive and ongoing." (*Id.* at ¶ 36.)

> "[D]efendants cannot, without misrepresenting the truth, label its Products as 'Non-Toxic,' 'Not Harsh' and 'Safe for People, Animals and the Environment.'" (*Id.* at ¶ 47.)

> "Labeling the Products as being 'NON TOXIC'" . . . when the Products can cause harm to humans, animals, and/or the environment is wholly misleading and deceptive." (*Id.* at ¶ 89.)

> "Defendants misleadingly, inaccurately, and deceptively presents its Products to consumers." (*Id.* at ¶ 111.)

> "Defendants made their untrue or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth." (*Id.* at ¶ 113.)

> "Defendants also made the untrue and misleading statements and representations willfully, as they knew for years that their representations were not true or accurate, yet continued to procure them anyway." (*Id.* at ¶ 126.)

Thus, Plaintiffs' claims are clearly grounded in fraud, which means the Complaint must also satisfy the heightened pleading standards under Rule 9(b).

Therefore, accepting the well-pled allegations in Plaintiff's Complaint as true, and construing those allegations in Plaintiff's favor, the Court should dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b) for a failure to state a claim because Plaintiff's allegations regarding ZORBX's cleaning products are speculative and fail to set forth a plausible basis for Defendants' claimed liability.

A. **Plaintiff's GBL §§ 349 and 350 claims fail as a matter of law because the Complaint does not sufficiently allege that ZORBX's products are toxic or harmful.**

The factual basis for all of Plaintiff's claims is that ZORBX's products are toxic and harmful, despite ZORBX's labeling to the contrary. Dismissal of all claims is appropriate under Fed. R. Civ. P. 12(b)(6) because Plaintiff failed to set forth sufficient allegations of fact supporting this conclusion.

Plaintiff claims that ZORBX's "Non-Toxic" labels are false and misleading because the "Products contain ingredients that are capable of causing, and have caused, harm to humans, animals, and the environment" (DOC#7 at ¶¶ 30, 69). In support, Plaintiff has identified ingredients within ZORBX's formulations, which can potentially cause skin, eye, and other irritations, depending upon their respective percentage within the formulation. *Id.* at ¶¶ 72-79.

ZORBX's labels, however, represent that the cleaning products as a whole are "Non-Toxic," not their individual components. Simply because an ingredient may be harmful in a certain concentration standing alone, does not mean that a product containing that ingredient is harmful. For example, chlorine in high concentrations is toxic to human beings but it can safely and harmlessly be included in drinking water as well as in swimming pools. The mere presence of chlorine in drinking water does not make it unsafe or toxic. Similarly, the presence of the ingredients cited by the Plaintiff does not make ZORBX's products toxic or unsafe.

The Federal Trade Commission, which puts out the "Green Guides" to help companies avoid making misleading and deceptive claims (DOC #7, ¶ 18), has provided guidance on this very issue. The FTC Green Guides recognize:

> [A] non-toxic product could contain a toxic substance at a level that is not harmful to humans or the environment. For example, apple seeds contain cyanide. Although a marketer could not claim that cyanide itself is non-toxic, the amount in an apple is so low that it is not harmful to humans or the environment, and so the marketer, could claim the apple is non-toxic.

(FTC Green Guides, attached hereto as Defendants' Ex. "A," p. 155)[5] The fact that ZORBX utilizes ingredients in its formulations that may be toxic or harmful at certain concentrations is in no way dispositive of whether ZORBX's products as a whole are "Non-Toxic" and "Free Of Harsh Chemicals," "Safe For All Surfaces," and "Safe For People, Pets, & The Planet." Therefore, Plaintiff must set forth factual allegations establishing that ZORBX's *formulations* are toxic.

Plaintiff, however, fails to set forth any of facts in the Complaint regarding the toxicity of ZORBX's formulation. In fact, Plaintiff admits that he does not know the actual formation of ZORBX's cleaning products:

> The Products' labeling does not adequately disclose to the consuming public the true nature of the ingredients contained in the Products. (*Id.*, at ¶ 31. Emphasis in original.)

---

[5] In deciding a motion to dismiss, a court may consider the full text of documents that are quoted in or attached to the complaint, or documents that the plaintiff either possessed or knew about and relied upon in bringing the suit. *Rothman v. Gregor*, 220 F.3d 81, 88–89 (2d Cir.2000) (*citing Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42 (2d Cir.1991), *cert. denied*, 503 U.S. 960 (1992)); *San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 808 (2d Cir.1996). "Plaintiffs' failure to include matters of which as pleaders they had notice and which were integral to their claim—and that they apparently most wanted to avoid—may not serve as a means of forestalling the district court's decision on the motion." *Cortec* 949 F.2d at 44 (2d Cir.1991); *see also I. Meyer Pincus & Assocs. P.C. v. Oppenheimer & Co.*, 936 F.2d 759, 762 (2d Cir.1991) ("plaintiff cannot evade a properly argued motion to dismiss simply because plaintiff has chosen not to attach the [document] to the complaint or to incorporate it by reference"). Defendants attached the FTC's Green Guides as an exhibit because Plaintiff references the Green Guides in his Complaint. *See,* DOC#7, ¶¶ 18-23.

> ZORBX omit[s] both the specific chemical ingredients contained in its products, as well as and [sic] weight and concentration fraction information[.] (*Id.*, at ¶ 43.)

> ZORBX has hidden and [is] hiding the ball on what actual ingredients are contained within their products. (*Id.*, at ¶ 46.)

> ZORBX does not publicly list or disclose the concentration of any ingredient contained in the Products. (*Id.*, at ¶ 50.)

Simply put—Plaintiff cannot assert plausible claims against ZORBX for deceptive and fraudulent advertising under GBL §§ 349-350 when he has no information regarding the content or formulation of the products in his lawsuit. Therefore, Plaintiff's citations to individual ingredients in ZORBX's products, per its patent and product data sheets, are insufficient to set forth a claim that ZORBX's cleaning products are toxic or harmful. (DOC#7, at ¶¶ 70-85).

ZORBX anticipates Plaintiff will argue he has no way of knowing what is in ZORBX's cleaning products. This argument was rejected in a nearly analogous case by the Honorable Ronnie Abrams in *Carmen Rivera, et al. v. S.C. Johnson & Son, Inc.,* 2021 WL 4392300 (S.D.N.Y. Sept. 24, 2021).

In *Rivera,* the plaintiffs filed a class-action lawsuit against defendant S.C. Johnson alleging that the "Non-Toxic" labeling of its Windex cleaning products was deceptive because "those products contain ingredients that may be harmful to humans, pets, or the environment." *Id.* at syllabus. The plaintiffs claimed Windex was made up on chemical ingredients that, depending upon their weight, cause skin and eye irritation as well as other effects. *Rivera, supra,* at *2. The plaintiffs admitted in their complaint, however, that they did not know the specific weights of the chemical ingredients making up the Windex formulations. *Id.*

S.C. Johnson moved to dismiss the complaint in its entirety arguing that plaintiffs' complaint failed to plausibly allege that its products were capable of causing harm. The Honorable Ronnie Abrams agreed with S.J. Johnson, stating:

> But Plaintiffs essentially acknowledge that they do not know the actual concentrations of the ingredients in the Products, and assert that that their allegations that the ingredients are harmful at "in-use concentrations" are "made on information and belief, based on what the ingredients' likely concentrations or percentages by weight are in the Products." The Complaint does not explain how Plaintiffs came to such information and belief or what facts, if any, support their conclusions as to the "likely" concentrations of ingredients in the Products. In the Court's view, without more factual content about the makeup of the Products or any evidence that the Products have caused harm in the real world, the Complaint pleads facts that are "merely consistent with a defendant's liability, thereby "stop[ping] short of the line between possibility and plausibility of entitlement to relief."

*Rivera, supra,* at *5 (internal citations omitted).

The plaintiffs argued that they did not know what ingredients were in S.C. Johnson's products because they were not publicly disclosed. The court rejected this argument for the following reasons:

> First, even if the precise specifications of the Products are in the Company's exclusive control, information about the effect of those ingredients in their current concentrations is not. If there were evidence that these widely-sold Products have caused harm to "people, common pets, or the environment," Plaintiffs presumably could have marshaled such evidence in the Complaint, and doing so may have made plausible the allegations that the toxic ingredients are present in sufficient concentration to cause harm. Plaintiffs, however, do not cite any such evidence— whether by reporting their own experiences in using the Products or even from reviews of the Products on the Internet or elsewhere. Indeed, Plaintiffs do not claim to have suffered any of the harmful effects they assert that the Products can cause.

> Second, Plaintiffs might have attempted to analyze the Products, which are widely available. In similar cases, testing of the product at issue is common. *See Sharpe v. A&W Concentrate Co.*, 481 F. Supp. 3d 94, 98 (E.D.N.Y. 2020) (noting, in a case brought by Plaintiffs' counsel, that "scientific testing of the products by an independent laboratory revealed that the vanilla flavoring of the products does not come from the vanilla plant."). The Court does not mean to suggest that a consumer-protection plaintiff will only be able to state a claim if he can retain an expert to conduct sophisticated chemical analysis before bringing suit. But the fact that the Products can be purchased at stores as ubiquitous as Target and tested suggests that basic facts about their chemical composition is not something exclusively in the control of Defendant. At the very least, the Complaint could contain allegations as to why such testing would not have been possible here—it does not.

> Finally, Plaintiffs could have consulted with experts in the field who might have been able to provide even minimal support for their bald assertion that "the ingredients' likely concentrations or percentages by weight" are sufficient to cause harm. *See Bautista v. CytoSport, Inc.*, 223 F. Supp. 3d 182, 191 (S.D.N.Y. 2016) ("It may be challenging for a plaintiff to present [facts about a defendant's product] before discovery, ... but where a claim is valid it is not impossible; for example, experts in the relevant field can be consulted or comparisons to similar products can be made.").

*Rivera supra,* at *6.

The court dismissed the plaintiffs' claims because their allegations against S.C. Johnson for deceptive advertising raised only the "mere possibility of misconduct." *Id., citing New York v. United Parcel Serv., Inc.*, 131 F. Supp. 3d 132, 137 (S.D.N.Y. 2015). *See also Yamashita v. Scholastic Inc.*, 936 F.3d 98, 107 (2d Cir. 2019) (a plaintiff must "marshal more than unsubstantiated suspicions to gain entitlement to broad-ranging discovery").

This Court should similarly dismiss Plaintiff's claims. First, Plaintiff has not alleged that he or any other third-party suffered physical harm due to the use of ZORBX's products. While Plaintiff cited to Amazon reviews, which is more than the *Rivera* plaintiffs, these reviews do not state that individuals were actually physically harmed by the products. Instead, the anonymous reviewers merely claimed the products gave off an undesired odor. (see DOC#7, ¶ 88). Therefore, Plaintiff failed to allege that any person, including himself, suffered injury or harm due to the claimed toxicity of ZORBX's products.

Moreover, Plaintiff alleges he purchased the ZORBX products from a "national retailer," which means that he, like the *Rivera* plaintiffs, could have easily tested the products before filing this suit to determine whether they were in fact toxic or harmful. Plaintiff could have also retained an expert to assist in this process. Instead, using only his lay understanding of the complex chemical ingredients identified in ZORBX's patent and product data sheets, and

without actual knowledge about the precise weights or concentrations of the individual ingredients within ZORBX's formulations, concluded that the products were harmful.

Plaintiff is alleging only "mere possibility of misconduct." The law in this district makes clear that these types of allegations are insufficient to survive a motion to dismiss. Plaintiff is required to set forth actual evidence in support of his contentions that ZORBX's products are deceptively advertised. This will require actual testing by Plaintiff of ZORBX's products to determine whether its formulations contain ingredients, which are toxic or harmful. Unless and until this evidence is provided to the Court, Plaintiff's claims should be dismissed for failure to state a claim.

**B.** **Plaintiff's claims brought under GBL §§ 349 and 350 should be dismissed for failure to meet the heightened pleading requirements of Rule 9(B).**

"Rule 9(b) requires that a plaintiff set forth the who, what, when, where and how of the alleged fraud." *U.S. ex. Rel. Polansky v. Pfizer, Inc.*, 2009 WL 145682 (E.D.N.Y. May 22, 2009). In this case, Plaintiff fails to allege with particularity when the products were purchased, where the products were purchased from, or the how or why the statements made by ZORBX on its product labels are deceptive.

First, Plaintiff only alleges that he purchased the ZORBX products in 2021. (DOC#7, ¶ 10).  Plaintiff does not provide any further details about the transaction such as the day or month of the transaction. Furthermore, Plaintiff does not provide any documentation substantiating the purchase such as a receipt or even an online banking record. These facts are critical because, as noted above, there are serious questions about whether Plaintiff purchased these products or even authorized the filing of this lawsuit by Plaintiff's counsel.

Second, other than saying the products were purchased "from a large retailer" in the State of New York, Plaintiff provides no information about what store the products were purchased

from. In *Rivera,* for example, the plaintiffs alleged that the Windex product was purchased from Duane Reade, Target, Stop & Shop, and Key Food. *Rivera, supra,* at *6. The lack of any information in the Complaint about where Plaintiff purchased the products again raises significant red flags about whether he did in fact purchase these products.

Finally, as analyzed in great detail above, Plaintiff has failed to sufficiently allege how or why ZORBX's advertising is deceptive or fraudulent. Section 349 of the NYGBL prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. Law § 349(a). Section 350 of the NYGBL prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. Law § 350.

To state a claim under Section 349 or 350, a plaintiff must allege: (1) that the defendant's acts were consumer oriented,  (2) that the acts or practices are deceptive or misleading in a material way, and (3) that the plaintiff has been injured as a result. *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F. Supp. 3d 467, 478 (S.D.N.Y. 2014); *see Orlander v. Staples, Inc.* 802 F.3d 289, 302 (2d Cir. 2015) (at the pleading stage, plaintiff must allege that "on account of a materially misleading practice, [Plaintiff] purchased a product and did not receive the full value of [their] purchase") (citation omitted).

Because Plaintiff cannot substantiate his conclusion that ZORBX's cleaning products are toxic or harmful, Plaintiff cannot establish at the pleading stage that ZORBX's advertising is deceptive or misleading. Moreover, reasonable consumers understand that cleaning products— even those that are non-toxic—may irritate the skin or eyes given that they are dealing with a chemical. For example, lemons and jalapenos are completely natural and non-toxic, yet can cause irritation to a person's eyes or skin if they are not handled appropriately.

21

Plaintiff's reference to ingredients in ZORBX's products that cause skin or eye irritation does not mean that a reasonable consumer would be deceived by the words non-toxic on a cleaning product's label. *Mantikas v. Kellogg Co.*, 910 F.3d 633, 636 (2d Cir. 2018)(To state a claim for false advertising or deceptive business practices under New York law, a plaintiff must plausibly allege that the deceptive conduct was "likely to mislead a reasonable consumer acting reasonably under the circumstances.") Even with a non-toxic cleaning product, a reasonable consumer would still avoid ingesting or inhaling the cleaning product or allowing it to come in contact with a person's eyes or skin. Accordingly, Plaintiff has failed to allege with sufficient particularity that ZORBX's labels are deceptive or misleading to a reasonable consumer.

## C. **Plaintiffs' Unjust Enrichment Claim fails as a matter of law because it is Duplicative of the GBL claims.**

Plaintiff's unjust enrichment claim is factually identical to their GBL and warranty claims and should therefore be dismissed as a matter of law. Unjust enrichment is an "equitable remedy" that "prevents one party from retaining, at the expense of another, a benefit to which he is not entitled." *United States v. Bedford Associates*, 713 F.2d 895, 901 (2d Cir.1983). However, an unjust enrichment claim fails where it "simply duplicates, or replaces, a conventional contract or tort claim." *Corsello v. Verizon New York, Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012); *see also Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 290 (S.D.N.Y. 2014) (dismissing unjust enrichment claim as duplicative of GBL § 349 and breach of express warranty claims, because "an unjust enrichment claim cannot survive where it simply duplicates, or replaces, a conventional contract or tort claim."); *Izquierdo v. Mondelez Intl., Inc.*, 16-CV-04697 (CM), 2016 WL 6459832, at *1 (S.D.N.Y. Oct. 26, 2016) (dismissing unjust enrichment claim as duplicative of GBL claims).

Plaintiff's unjust enrichment claim is factually identical to their GBL and warranty claims. Here, Plaintiffs' unjust enrichment claims allege that Plaintiffs purchased Defendants' Products due to purported "false and misleading labeling and advertising" and Defendants allegedly retained the revenue generated from Plaintiffs' purchases. (DOC#7, at ¶¶ 140 – 143.) Plaintiffs do not allege that they lack an adequate remedy at law. Plaintiffs fail to explain how their unjust enrichment claim is not merely duplicative of their other causes of action. *See Ebin v. Kangadis Food Inc.*, No. 13 CIV. 2311 JSR, 2013 WL 6504547, at *7 (S.D.N.Y. Dec. 11, 2013) (dismissing claim because plaintiff failed to explain how unjust enrichment claim was not duplicative of plaintiff's fraud and breach of warranty claims).

"[U]njust enrichment is not a catchall cause of action to be used when others fail." *Corsello*, 967 N.E.2d at 1185. To the extent that Plaintiffs' other claims succeed, "the unjust enrichment claim is duplicative," and "if plaintiffs' other claims are defective, an unjust enrichment claim cannot remedy the defects." *Corsello*, 967 N.E.2d at 1185. Accordingly, Plaintiff's entirely duplicative unjust enrichment claim fails as a matter of law and should be dismissed.

### D. Plaintiff's Breach of Warranty claim fails as a matter of law due to a lack of privity between Plaintiff and ZORBX.

Plaintiff's breach of warranty claim must be dismissed because due to a lack of privity. Under New York law, privity is an essential element of a cause of action for breach of express warranty, unless the plaintiff claims to have been personally injured. *DiBartolo v. Abbott Labs.*, 914 F.Supp.2d 601, 624-25 (S.D.N.Y.2012); *see also* N.Y.U.C.C. § 2–318.

In *Ebin v. Kangadis Food Inc.*, a similar case wherein the plaintiffs alleged that an oil manufacturer breached an express warranty that its product was "100% Pure Olive Oil," the court held that, absent an allegation of personal injury, plaintiffs' failure to adequately plead

privity was fatal to their express warranty claim. *Ebin v. Kangadis Food Inc.*, 13 CIV. 2311 JSR, 2013 WL 6504547, at *6 (S.D.N.Y. Dec. 11, 2013) ("Plaintiffs have not alleged that they were in privity with [defendant] and thus any breach of warranty under New York law must fail.").

The court in *Ebin* found there was no privity between plaintiff and defendant because the plaintiff did not purchase the product from the defendant but rather a retailer. Here, as in *Ebin,* Plaintiffs' have alleged solely economic injury:

> Plaintiff and members of the Class were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, plus pre and post judgment interest, in an amount to be proven at trial.

(DOC#7, at ¶ 137.) Plaintiffs have not alleged personal injury and therefore privity is required to assert a breach of warranty claim. Plaintiff, however, has not alleged that he purchased the product from ZORBX. In fact, Plaintiffs merely allege they purchased Defendants' products "in the state of New York," but do not specify where, when, or from whom. (DOC#7, at ¶¶ 9-10.) Accordingly, Plaintiffs' breach of warranty claim fails as a matter of law and must be dismissed.

## **CONCLUSION**

For the reasons set forth above, Defendants ZORBX, Inc., Debbie Mabrouk, and Issa Mabrouk respectfully request that this Court dismiss the Complaint in its entirety with prejudice pursuant to Rule 12(b)(1), Rule 12(b)(2), and/or Rule 12(b)(6) of the Federal Rules of Civil Procedure.

DATED: February 14, 2022                    Respectfully submitted,

*/s/ Kathryn E. Hickner*
Kathryn E. Hickner
Jeffrey C. Miller (*Pro Hac Vice Pending*)
**BRENNAN MANNA & DIAMOND, LLC**

200 Public Square, Suite 3270
Cleveland, OH 44114
Telephone:  216.658.2155
Facsimile:   216.658.2156
Email: kehickner@bmdllc.com
       jcmiller@bmdllc.com

Kyle A. Johnson (*Pro Hac Vice Pending*)
**BRENNAN MANNA & DIAMOND, LLC**
75 East Market Street,
Akron, OH 44308
Telephone:  330.253.5060
Facsimile:   330.253.1977
Email: kajohnson@bmdllc.com

*Counsel for Defendants, Zorbx, Inc., Debbie Mabrouk, and Issa Mabrouk*

4857-8384-7693, v. 3